IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JENNIFER PLANT PLAINTIFF

VS. CIVIL NO. 06-2032

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION DEFENDANT

**MEMORANDUM OPINION**

Jennifer Plant ("plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Act.

**Background:**

The applications for DIB and SSI now before this court were filed on December 30, 2003, alleging an onset date of December 15, 2003, due to mental retardation. (Tr. 58). An administrative hearing was held on February 3, 2005. (Tr. 207-239). Plaintiff was present but not represented by counsel.

The ALJ issued a written decision on September 19, 2005, finding that plaintiff was not disabled within the meaning of the Act. (Tr. 11-17). He concluded that, while plaintiff's borderline mental retardation was "severe" within the meaning of the Regulations, it did not meet or medically equal an impairment contained in the Listing of Impairments in Appendix 1 to Subpart P of Regulations No. 4. (Tr. 16). The ALJ then determined that plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels. However, due to her mental impairment, he found that plaintiff was moderately limited with regard to her ability to understand and remember

detailed instructions, carry out detailed instructions, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and set realistic goals or make plans independently of others. (Tr. 15). As such, the ALJ concluded that plaintiff could return to her PRW as a hospital housekeeper. (Tr. 16).

At the time of the ALJ's decision, on September 19, 2005, plaintiff was twenty-six years old and possessed an eleventh grade education. (Tr. 215). Records reveal that plaintiff was enrolled in special education classes. Plaintiff also has past work experience ("PRW") as a general laborer in a sheltered workshop, hospital housekeeper, and sewing machine operator. (Tr. 12, 216, 223).

On October 5, 2005, the Appeals Council declined to review this decision. (Tr. 3-6). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties were afforded the opportunity to file appeal briefs but plaintiff has chosen not to do so. The case is now ready for decision.

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists



AO72A
(Rev. 8/82)

in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in



AO72A
(Rev. 8/82)

light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003).

**Evidence Presented:**

The relevant medical evidence is as follows. On September 5, 1996, Dr. Morris Middleton, a psychologist, evaluated plaintiff. (Tr. 93-96). Plaintiff complained of dysthymic symptoms to include, irritable mood, low energy, fatigue, low self-esteem, and poor concentration. Dr. Middleton concluded that plaintiff had adequate interpersonal and communication skills, however, her reading, spelling, and mathematical abilities were only at the fourth grade level. Intellectual testing revealed that plaintiff functioned in the borderline range of intelligence. (Tr. 95). As a result, Dr. Middleton diagnosed plaintiff with dysthymic disorder, borderline intellectual functioning, and academic deficits. (Tr. 95). In spite of plaintiff's mental limitations, he indicated that placement in a training program and productivity may aide in the alleviation of her symptoms. Dr. Middleton opined that plaintiff should be able to be successful in a sheltered workshop program and may also be successful in unskilled labor. (Tr. 95).

On November 25, 2003, Leslie S. Johnson, a licensed psychological examiner, administered the Wechsler Adult Intelligence Scale-Third Revision (WAIS-III). (Tr. 121-123). Plaintiff obtained a verbal IQ score of sixty-six, a performance IQ score of sixty-five and a full scale IQ score of sixty-three. (Tr. 121-122). Ms. Johnson noted that plaintiff's test results appeared consistent with a diagnosis of mild mental retardation. Further, she opined that plaintiff was capable of performing a variety of basic, low-demand jobs. Ms. Johnston stated that plaintiff would be most successful in a work setting where she performed repetitive tasks or had a daily routine. She noted that plaintiff

might require extended time in training and that extensive vocational guidance and counseling was recommended. (Tr. 123).

On March 2, 2004, Patricia J. Walz, a psychologist, performed an intellectual assessment of plaintiff. (Tr. 97-99). Plaintiff told the doctor that she had applied for Social Security disability benefits because she was slow "at catching on at things." (Tr. 97). She stated that she had lost her job at the hospital due to absenteeism. However, at the current time, she was working at BOST doing piece work. Although testing revealed that plaintiff's arithmetic skills were deficient, she stated that she was managing her own money. (Tr. 98). Plaintiff also told Dr. Walz that she spent her time working and watching television. While plaintiff did not have a drivers license, she stated that she did leave the house two to three times per week to go to the store. (Tr. 98).

On the WAIS-III, plaintiff earned a verbal IQ score of sixty-seven, a performance IQ score of sixty-four, and a full scale IQ score of sixty-three. (Tr. 98). Dr. Walz noted that plaintiff did not need assistance with activities of daily living. (Tr. 98). Further, she noted that plaintiff had impairments in academic skills, pace, and social skills. (Tr. 99). As such, Dr. Walz concluded that plaintiff's adaptive functioning was consistent with a diagnosis of mental retardation. (Tr. 99).

**Discussion:**

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320,



AO72A
(Rev. 8/82)

1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

The record currently before the court reveals that plaintiff suffered from intellectual deficits. As previously stated, plaintiff had a full scale IQ of only sixty-three, placing her in the mentally retarded range of intellectual functioning. In spite of this, however, plaintiff has continued to work. At the time of the administrative hearing, plaintiff was working at BOST sewing hems on head nets for the military. (Tr. 216-217). The law clearly states that work performed under special conditions of employment which take account of an employee's impairment (i.e., sheltered workshop or in a hospital by a patient) may, nonetheless, provide evidence of skills and abilities that demonstrate an ability to engage in substantial gainful activity, whether or not the work at issue actually constitutes substantial gainful activity. *See* 20 C.F.R. § 404.1532 (e). Further, prior to that working at BOST, plaintiff had held short-term positions at Gerber and Southern Steel and Wire. (Tr. 218). Prior to that, from 1999 to 2002, she had worked as a hospital housekeeper. (Tr. 223). While we cannot say that these positions amounted to substantial gainful activity, we do find that they constitute

evidence of plaintiff's ability to perform work-related activities. See *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001); *Starr v. Sullivan*, 981 F.2d 1006, 1008 n.3 (8th Cir. 1992). Accordingly, plaintiff has not shown that her intellectual deficits have rendered her disabled.

In addition, although there are records that indicate that plaintiff was treated for anxiety prior to her alleged onset date, these records also reveal that she did not seek consistent treatment for this condition. *See Jones v. Callahan*, 122 F.3d 1148, 1153 (1997) (holding that ALJ properly concluded claimant's mental impairment was not severe where he was not undergoing regular mental health treatment or regularly taking psychiatric medications). Further, the records do not show that plaintiff was ever given an ongoing prescription for medication to treat this condition. In fact, during her evaluations with Dr. Middleton and Leslie Johnson, plaintiff indicated she was not taking any medication. (Tr. 97, 121). As such, we can not say that plaintiff's alleged anxiety/dysthymia was a severe or disabling condition. *Id*.

Plaintiff's own reports concerning her activities of daily living also contradict her claim of disability. On a supplemental interview outline, completed on January 15, 2004, plaintiff reported an ability to care for her personal hygiene, do the laundry, wash the dishes, change the sheets, iron, vacuum/sweep, take out the trash, wash the car, mow the lawn, rake the leaves, shop for groceries and clothing, go to the bank and post office, prepare meals, pay bills, count change, walk for exercise and errands, and use public transportation. (Tr. 53-54). In addition, plaintiff told Dr. Walz that she spent her time working and watching television. (Tr. 98). *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and



AO72A
(Rev. 8/82)

attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). Therefore, although plaintiff may experience some difficulties associated with her mental or emotional health, we find that the ALJ, after considering all of the relevant evidence, properly concluded that these difficulties did not render plaintiff disabled.

Plaintiff also contends that the ALJ erred in finding that she maintained the RFC to perform work at all exertional levels with moderate limitations in her ability to understand and remember detailed instructions, carry out detailed instructions, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and set realistic goals or make plans independently of others. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000).



AO72A
(Rev. 8/82)

Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.15459(c), while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs*., 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987) (RFC was "medical question,"and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ considered the medical assessments of non-examining agency medical consultants, additional mental status evaluations, plaintiff's subjective complaints, and her medical records. On March 9, 2004, Dr. Katherine Gayle, a non-examining psychologist, reviewed plaintiff's medical records. (Tr. 100-118). She diagnosed plaintiff with mental retardation and noted that plaintiff had moderate limitations regarding restrictions of daily living with only mild deficiencies in maintaining social functioning and maintaining concentration, persistence, or pace. (Tr. 104, 114). Further, Dr. Gayle concluded that plaintiff had moderate limitations with regard to her ability to understand and remember detailed instructions, carry out detailed instructions, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistence pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and set realistic goals or make plans independently of others. (Tr. 100-101).

The ALJ also considered the evaluations prepared by Drs. Middleton and Walz and Ms. Johnson. In so doing, he noted that the evaluators repeatedly stated that plaintiff was capable of performing unskilled, low demand labor. (Tr. 95, 123). Further, while we do note that psychological testing has consistently revealed that plaintiff functions in the mentally retarded range of intellectual

functioning, we also note that plaintiff was working at the time of the administrative hearing, in spite of this condition. We also note that plaintiff's own reports of her abilities have revealed that she remains capable of performing work-related activities.

In addition, we find substantial evidence supports the ALJ's finding that plaintiff can return to her PRW as a hospital housekeeper. In a hypothetical question to the VE, the ALJ asked the VE to assume that the applicant had a full scale IQ score of sixty-three. (Tr. 237). The VE testified that given plaintiff's I Q, she could still return to her PRW as a hospital housekeeper, which was classified as unskilled, medium work. We note that a VE's response to a properly posed hypothetical question constitutes substantial evidence to support an ALJ's findings. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Accordingly, we find substantial evidence to support the ALJ's determination that plaintiff could perform her PRW as a hospital housekeeper.

Finally, we reject plaintiff's contention that the ALJ failed to fully and fairly develop the record. The ALJ is required to develop the record fully and fairly even when a claimant has an attorney. *See Freeman v. Apfel,* 208 F.3d 687, 692 (8th Cir.2000) (ALJ only must order consultative examination when it is necessary for an informed decision); *See Strongson v. Barnhart,* 361 F.3d 1066, 1071-72 (8th Cir. 2004) (ALJ must develop record fully and fairly to ensure it includes evidence from treating physician, or at least examining physician,addressing impairments at issue). Although plaintiff has failed to file a brief with this court, in a letter to the Appeals Council, plaintiff's attorney argued that the ALJ failed to develop the record with regard to plaintiff's dysthymia and anxiety. He states that the ALJ left the record open for additional records concerning



AO72A
(Rev. 8/82)

treatment plaintiff had received for anxiety. However, plaintiff's counsel also states that no records were ever filed. He then points out that Dr. Middleston diagnosed plaintiff with dysthymia in 1996. While we do note that the record was left open for these additional records, we also note that the hospital these records were requested from filed a letter stating that no such records existed. Further, there are no records contained in the file to suggest that plaintiff sought ongoing psychiatric treatment or medication for her alleged anxiety or dysthymia. As such, we can not say the ALJ erred it failing to develop the record further with regard to this alleged impairment.

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

ENTERED this 26th day of January 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE



AO72A
(Rev. 8/82)